FILED

2008 Nov 26 PM 01:48

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CANTON

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| WILLIAM HOWARD LEACH, JR. | ) | CASE NO. 08-60100 |
| | ) | |
| Debtor. | ) | ADV. NO. 08-6046 |
| | ) | |
| ST. MARY'S CEMENT CO., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| WILLIAM HOWARD LEACH, JR., | ) | **PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Now before the Court is the motion for summary judgment filed by Plaintiff St. Mary's Cement Co. ("Plaintiff") in the above-captioned adversary proceeding. Plaintiff filed the instant motion on October 31, 2008. Debtor-Defendant William Howard Leach, Jr. ("Defendant") filed a response on November 10, 2008; Defendant amended that response to add a missing page on November 20, 2008, after Plaintiff filed a motion to strike the incomplete initial response. Plaintiff also filed a reply brief to Defendant's response on November 17, 2008.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(I). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant is the president and sole shareholder of William H. Leach Enterprises ("WHLE"). Hartville Redi-Mix ("HRM"), in turn, is a subsidiary of WHLE.

On July 9, 2002, Defendant signed a "Guarantee of Past and Future Indebtedness" ("Guarantee") on behalf of HRM in favor of Plaintiff. Defendant agreed to personally guarantee up to $500,000.00 of HRM's current or future indebtedness to Plaintiff. On April 8, 2003, Defendant signed a "Confidential Financial Statement" regarding his financial

position as of February 24, 2003 ("February 2003 Statement"), and provided this statement to Plaintiff. The April Statement declared that Defendant had a net worth of $7,405,386.00, a substantial portion of which consisted of "stocks owned" worth $3,535,000.00. After receiving this information, Plaintiff extended forbearance and additional credit to WHLE's business account.

On December 29, 2006, HRM filed for protection under Chapter 11 of the Bankruptcy Code. That case was dismissed for nonprosecution on November 10, 2008, following a notice of proposed dismissal entered on October 16, 2008.

On August 30, 2007, Plaintiff filed an action against Defendant personally in state court, alleging breach of the Guarantee. That action is currently stayed by the automatic stay due to the filing of the bankruptcy case in which this adversary arises.

On January 15, 2008, Defendant filed for bankruptcy under Chapter 7 of the Bankruptcy Code. On his Schedule F, he scheduled a claim for $732,569.35 by St. Mary's Cement Co., listing that debt as contingent, unliquidated, and disputed. At the creditors' meetings, Plaintiff obtained copies of other financial statements similar to the February 2003 Statement. The first was a statement of Defendant's financial position as of April 30, 2002 ("April 2002 Statement"). The April 2002 Statement likewise asserted that the value of Defendant's stock was $3,535,000.00; however, the April 2002 Statement also included a breakdown of the stocks held, which the February 2003 Statement did not. The stocks held were all the shares of the various businesses Defendant owned and controlled: HRM, Leach Trucking and Disposal Service, Mogadore Limestone, and Nu Way, Inc., the former three of which formed $3,500,000.00 of the total and all operated under the umbrella of WHLE. A consolidating income statement for WHLE for calendar year 2002 shows that the combined enterprises lost $80,907 that year; HRM lost $30,703. (Pl.'s Ex. D.) At the creditors' meeting, Plaintiff also discovered another confidential financial statement, this one stating Defendant's financial position as of November 17, 2003 ("November 2003 Statement"). The November 2003 statement listed the value of Defendant's stock portfolio as $1,210,500.00, just over a third of its value from the April 2003 Statement. An itemization of the stocks held now showed Defendant as simply owning 100% of the stock in WHLE rather than its three component stocks, plus Nu-Way Transport. The value of WHLE was now listed as $1,155,500, less than a third of its value on the April 2003 Statement. On the other hand, the combined enterprises turned a profit of $67,066 in calendar year 2003, despite the lower valuation of those stocks; HRM was the combined company's most profitable subsidiary that year, with net income of $348,717. Despite this, in yet another confidential financial statement, this one detailing Defendant's financial condition as of April 1, 2004 ("April 2004 Statement"), the value of Defendant's stock remained the same, $1,210,500.00.

Plaintiff filed the instant adversary complaint on April 10, 2008. In the complaint, Plaintiff alleges that Defendant's debt to Plaintiff should be held nondischargeable to the extent of the $500,000.00 Guarantee based on both 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B). Plaintiff also alleges that $38,836.95 debt of Defendant's to Plaintiff should be held nondischargeable for a separate reason: bounced checks issued in December of 2006, on the eve of HRM's bankruptcy. Plaintiff alleges that by that time, it was aware of HRM's deteriorating financial condition and would only deliver goods cash on delivery.

On October 31, 2008, Plaintiff filed the instant motion for summary judgment,

proceeding solely on the basis of its claim under 11 U.S.C. § 523(a)(2)(B). Plaintiff alleges that the April 2003 Statement constitutes a materially false written statement respecting the debtor's financial condition, made with the intent to deceive, on which Plaintiff materially relied in extending additional credit and forbearance to Defendant, and that this renders the debt on the Guarantee nondischargeable.

Defendant filed its complete brief in response on November 20, 2008. His brief says essentially nothing about the fact that the stocks reported on the April 2003 Statement were in fact his stocks in the companies that he owned, including the one for which he was guaranteeing debts to Plaintiff. However, he avers and provides financial statements to show that WHLE was profitable in 2003 and 2004. (The statements do not show specifically whether HRM, WHLE's subsidiary, was profitable in 2004; the Court knows that it was profitable in 2003 only because of the 2003 consolidating income statement provided by Plantiff. (Pl.'s Ex. F.)) Defendant asserts that his only error was in double-counting a piece of property (unrelated to his stock portfolio) on the financial statement. Defendant's affidavit states that corrected financial statements were produced and sent to St. Mary's in 2004. (Leach Aff. para. 7.) Defendant claims that Plaintiff continued to supply $175,000.00 to $250,000.00 per month in cement to Defendant even after 2003. Defendant states that in April of 2004, Plaintiff negotiated a note receivable with HRM for $495,145.44, and was apprised of Defendant's financial condition prior to that extension of credit. (Leach Aff. paras. 9-10.)

Plaintiff filed a reply on November 17, 2008 (Plaintiff had been given an accurate copy of Defendant's complete response brief before Defendant actually uploaded that brief to the Court's Electronic Case Filing system). In it, Plaintiff states that Defendant's double-counting of property was in fact a parcel worth $2.6 million, making it a material misstatement in itself. Plaintiff also states that it was assured that the "stocks" listed on the February 2003 Statement it received were "marketable securities," and that Defendant promised to produce a list of those securities and never did.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The moving party carries the initial burden and must "identify[] those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing F.R.C.P. 56(c)). Evidence, including all reasonable inferences, considered on a motion for summary judgment must be viewed in the light most favorable to the non-movant. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986). The moving party must demonstrate that no reasonable trier of fact could make a finding for the non-moving party. *See* Calderone v. U.S., 799 F2d 254, 259 (6th Cir. 1986) (quotation omitted). If the moving party satisfies its burden, the non-movant cannot merely rest on the pleadings, but must introduce specific evidence demonstrating the existence of issues of fact. Huizinga v. U.S., 68 F.3d 139 (6th Cir. 1995) (citing Celotex Corp., 477 U.S. at 324).

## II. Obtaining Credit Via Fraudulent Written Statements

Under 11 U.S.C. § 523(a)(2)(B), a debt is nondischargeable if credit was obtained by

(B) use of a statement in writing
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.

Id.; see also Fahey Bank v. Benton (In re Benton), 367 B.R. 592, 596 (Bankr. S.D. Ohio 2006); Carson v. Chamberlain (In re Chamberlain), 330 B.R. 195, 203 (Bankr. S.D. Ohio 2005). A creditor seeking a judgment of nondischargeability must prove each of the elements of his complaint for the same by a preponderance of the evidence. *See, e.g.*, Grogan v. Garner, 498 U.E. 279, 291 (1991). Exceptions to discharge are construed strictly against the creditor. Rembert v. AT&T Universal Card Servs. (In re Rembert), 141 F.3d 277, 281 (6th Cir. 1998) (citation omitted).

## II. Remaining Issues of Material Fact

There does not appear to be any serious dispute that the Guarantee and Financial Statement were "statements in writing," or that they concerned the "debtor's ... financial condition." Unfortunately, the ascertainable material facts end there. While under Grogan, Plaintiff need only prove each element by a preponderance of the evidence, under Matsushita, the Court is obligated to view the facts in the light most favorable to Defendant. On at least two critical issues of material fact–whether Plaintiff relied in fact on the financial statement and whether Defendant caused the statement to be made or published with the intent to deceive–a reasonable jury could find for the Defendant, particularly viewing the facts in the light most favorable to him. Since Plaintiff bears the burden of proof on all elements of the § 523(a)(2)(B) claim and must prevail on all five to secure a judgment of nondischargeability, a finding that a reasonable jury could find for Defendant on any one of those elements is independently sufficient to render a motion for summary judgment acarpous. It is therefore unnecessary for the Court to delve into every element of the claim.

### A. Reasonable Reliance

Genuine issues of material fact remain regarding whether Plaintiff reasonably relied on Defendant's stock portfolio being worth $3,535,000.00 when it extended him credit. The

strongest reason for this is simply that it appears–though the Court does not find this proven yet–that they were provided with a financial statement in 2004 that showed Defendant's stocks valued at the lower figure of $1,210,500.00 and nevertheless loaned him more money.

In Bank One, Lexington, N.A. v. Woolum (In re Woolum), 979 F.2d 71 (6th Cir. 1992), the Sixth Circuit held that "reasonable reliance" under 11 U.S.C. § 523(a)(2)(B) "is a factual determination to be made in light of the totality of the circumstances." Id. at 75 (quoting BancBoston Mortgage Corp. v. Ledford (In re Ledford), 970 F.2d 1556, 1560 (6th Cir. 1992) (articulating the same standard for reasonable reliance under § 523(a)(2)(A))). The issue of reasonable reliance has been subdivided into two distinct inquiries: (1) whether the creditor actually relied on the materially false statement, and (2) whether that reliance was objectively reasonable. Natl. City Bank v. Plechaty (In re Plechaty), 213 B.R. 119, 126 (B.A.P. 6th Cir. 1997).

Plaintiff fairly points out that the Sixth Circuit has held that "the reasonableness requirement of § 523(a)(2)(B) cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith." Woolum at 76 (citation omitted). However, the issue here is not the reasonableness of relying on Defendant's statements but whether Plaintiff relied in fact on Defendant's overstatement of his worth in the first place, which must be established before the issue of reasonableness becomes relevant. From the evidence presented thus far, it appears that there may have been no material change whatsoever in Plaintiff's willingness to sell Defendant cement on credit before and after seeing the reduced figures, which would tend to show that Plaintiff did not rely in fact on the value of Defendant's stock portfolio being the higher figure initially claimed. Plaintiff has not alleged that it stopped selling Defendant cement on credit in April of 2004, though it also disputes that any disclosure of WHLE's deteriorating financial condition was ever made to it. At the very least, Plaintiff has not proven reliance in fact by a preponderance of the evidence. The briefs submitted frequently speak orthogonally to one another, and the credit relationship did not end and may not even have changed after April of 2004; in fact, it seems Plaintiff may even have extended Defendant additional credit at that time, though the existence and terms of such an extension remain unestablished.

### B. Intent to Deceive

In addition, genuine issues of material fact remain whether Defendant made the false statements with intention to deceive, or was grossly reckless in doing so. The "intent to deceive" element of the cause of action under § 523(a)(2)(B) can be met by showing either actual intent to deceive or gross recklessness as to the material falsity of the financial statement in question. See Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1167 (6th Cir. 1985).

Plaintiff has submitted the deposition of a bookkeeper, Lucas Mathie, who worked for WHLE and various subsidiaries of it through much of the relevant period of time, and attempts to cite passages from that deposition as evidence that "Leach was intimately aware of the company's cash flow problems as well as the other financial issues of the company." (Pl.'s Br. para. 29.) One of Mathie's functions at the company was to produce financial reports for internal use. Mathie took a sabbatical from the company from October of 2002 through December of 2003; his impression before leaving was that the company was having some cash-flow problems and that those problems remained when he returned in December

of the following year. However, while that may have been Mathie's impression and may even have been factually correct, a reasonable jury could still find that Defendant still neither intended to deceive Plaintiff nor was grossly reckless in submitting statements showing an overly optimistic estimate of the worth of Defendant's companies. Mathie may have had the impression that cash flow problems persisted in December of 2003, but the consolidated statement of WHLE's income and retained earnings for that year shows that HRM earned a profit of $348,717 that year on revenue of $5,777,002. (Pl.'s Ex. F.) The combined enterprises showed a proft of $67,066 on revenue of $6,923,501, and that counts considerable expenses for depreciation in other subsidiaries of WHLE ($300,000.00 in one case) that would not have impeded cash flow. In addition, Mathie testified that WHLE produced confidential statements for St. Mary's Cement "on a periodic basis" (Mathie Dep. 20, lines 14-16), which is insufficient, standing alone, to find that Defendant did submit correct information to Plaintiff later, but also calls into question Plaintiff's asseveration that Defendant never submitted such information to Plaintiff.

In sum, viewed in the light most favorable to Defendant, the facts are not such that no reasonable jury could find for him. Unanswered questions remain regarding whether Plaintiff did in fact receive confidential financial statements disclosing the lower estimated value of Defendant's stock before the creditors' meeting, and if so, whether this had any tangible impact on their willingness to extend Debtor credit. In addition, unanswered questions remain regarding whether it was grossly reckless of Defendant to believe that his companies were worth $3,565,000 as of April 2003.

An order denying Plaintiff's motion for summary judgment will be entered concurrently with this opinion.

/s/ Russ Kendig

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

St. Marys Cement Co.
250 Jefferson Ave.
Cleveland, OH 44113

David G. Finley
Matthew Thomas
45 W. Prospect Ave., #1650
Cleveland, OH 44115

William Howard Leach, Jr.
2859 Daisybrook Street, NW
North Canton, OH 44720

John A Daily
Daily & Freeman
2475 Massillon Rd
Akron, OH 44312